UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS KELLY,<br><br>            Plaintiff,<br><br>    v.<br><br>WORTH HOLDINGS, LLC, et al.,<br><br>            Defendants. | Case No. 17-cv-02466-EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Docket No. 13 |

In this breach of contract case, Plaintiff Thomas Kelly alleges that Defendant E.S. West Coast, LLC, and its parent company, Worth Holdings, LLC, violated a written employment agreement by terminating him prior to the end of the contract, by failing to pay bonus compensation, and by failing to pay him a severance. Plaintiff also alleges a violation of the California Labor Code for unpaid wages at the time of discharge. Defendants move for judgment on the pleadings on all claims, except for Plaintiff's claim for unpaid severance, pursuant to Rule 12(c), and for dismissal of Worth Holdings as a non-party to the contract (presumably under Rule 12(b)(6)). For the reasons stated below, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**. Further, the Court *sua sponte* **DISMISSES** Plaintiff's claim for severance with leave to amend. Consistent with this order, Plaintiff shall file an amended complaint within thirty (30) days of the date of this order.

## I. INTRODUCTION AND FACTUAL BACKGROUND

Plaintiff was employed as President of E.S. West Coast from December 15, 2014 to February 1, 2017, Docket No. 1 ("Compl.") ¶ 9, pursuant to a written agreement entered on December 15, 2014 with Defendant E.S. West Coast LLC. *Id.* ¶ 10. The agreement is attached to the complaint. *Id.*, Ex. 1 ("Agreement").

A. <u>Term of Employment</u>

The parties agree that the Agreement established an initial two-year employment term, but they disagree about when Defendants were required to provide notice to prevent the employment term from automatically renewing for an additional year. Plaintiff alleges that pursuant to the Agreement, his initial employment term was from December 15, 2014 to December 15, 2016, *see* Compl. ¶ 15, and that "[o]n December 15, 2015, the employment term automatically renewed to December 15, 2017 because Defendants did not provide Plaintiff with notice at least 60 days prior to December 15, 2015." Compl. ¶ 16. Because the non-renewal letter was not sent until June 29, 2016, *id.* ¶ 17, Plaintiff alleges his employment term would not have ended until December 15, 2017, rather than December 15, 2016. *Id*. ¶ 20. Defendants contend that the Agreement clearly states notice was not required until 60 days prior to December 15, 2016 (the end of the initial term of the Agreement); because notice was provided before that date, they claim Plaintiff's employment term properly ended December 15, 2016.

The Agreement states:

> Subject to the terms and conditions of this Agreement, effective upon the execution of this Agreement and for a period of Two (2) year [sic] ("Employment Term"), Employee agrees to provide services to the Company in the capacity of subsidiary president.

Agreement § 1(a). It further provides:

> *Auto-renewal*. As is the intent of Employee and Company that the Employee be always under contract for the next two years, this Agreement shall automatically renew and the Employment Term shall be extended for additional one-year periods at the end of each contract year, unless Employee or Company provide written notice to the other party at least sixty (60) days prior to the termination of the then current term of this Agreement of its intention to not renew the Agreement.

*Id.* § 1(b). Finally, Section 3(e) provides:

> *End of the Term of this Agreement*. The Company may terminate the employment of the Employee at the end of the term of this Employment Agreement without any liability on the part of the Company to the Employee, provided that if the Employee continues to be an employee of the Company after the term of this Employment Agreement ends, his employment shall be governed by the terms and conditions of this Agreement, but he shall be an

2

employee at will and his employment may be terminated at any time by either the Company or the Employee without notice and for any reason not prohibited by law or no reason at all. The Company shall promptly reimburse the Employee for the amount of any reasonable expenses incurred by the Employee prior to such termination as required under paragraph (viii) of Section 2 above.

B. <u>Bonus Compensation Terms</u>

Pursuant to the Agreement, Plaintiff was to be paid an annual salary of $180,000. Compl. ¶ 12. The parties dispute whether the Agreement also guaranteed Plaintiff additional bonus compensation. According to Plaintiff, the Agreement provides that "in mid-2015, the parties would establish bonus compensation for Plaintiff for 2016 and subsequent years with a minimum bonus of $225,000 to $250,000 and with no maximum compensation." *Id.* However, this provision of the Agreement more specifically states:

> It is understood, that beginning in 2016 and as established in 2014 thru 2015 per this agreement, the goal is to compensate the employee with base pay and bonus incentives that is [sic] driven from different performance metrics, meaning financial metrics (profitability, gross margin growth, top line growth, etc.), operational metrics (meeting and/or exceeding budget, cost reductions, improved efficiencies, etc.) and other more discretionary metrics (improved company/employee communications, establishing a sales training/mentoring program, etc.). Given the living and breathing changes (I.e., financial, operational, cultural, etc. changes) at Energy Systems, Employee and Company will be able to better establish incentive compensation for 2016 and beyond sometime after the mid-year in 2015. The minimum goal for base and bonus compensation is to be in the $225,000 - $250,000 range with mutually agreeable stretch goals/incentives to exceed $250,000 with no upside cap on total compensation as goals and incentives exceed expectations. The mix of the metrics may change and be weighted differently each year to best incent the Employee in areas of opportunity.

Agreement § 2(ix).

If the Agreement creates an enforceable promise, then Plaintiff alleges that he was not paid a bonus from January 1, 2016 to February 1, 2017, and is owed bonus compensation for that period. Compl. ¶¶ 26, 35.

C. <u>Severance Terms</u>

Plaintiff alleges that, pursuant to Section 3(e) of the Agreement, "Defendants shall, at the time of the termination, pay Plaintiff a lump sum severance payment of an amount equal to one year of salary at the rate in effect at the time of termination and full benefits, including health

3

insurance, flex plan and retirement plan, for the lesser of eighteen months or the full unexpired employment term." Compl. ¶ 19.

Section 3(e) of the attached Agreement does not contain such a provision, but Section 3(f) states:

> *Severance.* If the employment of the Employee is terminated by the Company without cause (whether before the end of the term of this Agreement or, if the Employee is employed by the Company under paragraph (e) of this Section 3, after the term of this Agreement has ended), then the Employee shall be paid, as a lump sum severance payment at the time of such termination an amount equal to one year of salary at the rate in effect at the time of termination, together with the value of any accrued but unused vacation time.

Agreement § 3(f). Further, Section 3(d) states:

> *Termination Without Cause*. A termination "without cause" is a termination of the employment of the Employee by the Company that is not "for cause" and not occasioned by the resignation, death or disability of the Employee. If the Company terminates the employment of the Employee without cause (whether before the end of the term of this Employment Agreement or, if the Employee is employed by the Company under paragraph (e) of this Section e, after the term of this Employment Agreement has ended), the Company shall, at the time of such termination, pay to the Employee the severance payment provided in paragraph (f) of this Section 3 together with the value of any accrued but unused vacation time and the amount of all accrued but previously unpaid base salary through the date of such termination and shall provide him with all benefits to which he is entitled under Section 4 below for the lesser of eighteen (18) months or the full unexpired term of this Employment Agreement.

Agreement § 3(d). Defendants have not materially disputed Plaintiff's interpretation of the Agreement, but the question remains whether Plaintiff's termination was "without cause."

## II. <u>DISCUSSION</u>

A. <u>Legal Standard</u>

1. <u>Motion for Judgment on the Pleadings Under Rule 12(c)</u>

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to

4

judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989).

The same standard of review applies to both Rule 12(c) and Rule 12(b)(6) motions. *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1054, n.4 (9th Cir. 2011). Thus, "[f]or purposes of the motion, the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." *Id.* "[D]ocuments specifically referred to in a complaint, though not physically attached to the pleading, may be considered where authenticity is unquestioned." *Id.* Because the Agreement is attached to the complaint and its authenticity is unquestioned, the Court may consider it here.

"The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001). "[W]hen a written instrument contradicts allegations in a complaint to which it is attached, *the exhibit trumps the allegations*." *Thompson v. Illinois Dept. of Professional Regulation*, 300 F.3d 750, 754 (7th Cir. 2002) (citation and quotation omitted, emphasis in original); *see also Dunson v. Cordis Corp.*, No. 16-cv-03076-SI, 2016 WL 3913666, at *2 (N.D. Cal. Jul. 20, 2016). The court should not dismiss the complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Id.*

2. Interpretation of Contract

"[T]he interpretation of a contract, including resolution of an arguable ambiguity, is a question of law that may be resolved on a pleadings challenge." *Sprinkles v. Associates Indem. Corp.*, 188 Cal.App.4th 69, 76 (2010). Under California law, "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting," Cal. Civ. Code § 1636, but "[i]ntent is to be inferred, if possible, solely from the written provisions of the contract." *AIU Ins. Co. v. FMC Corp.*, 51 Cal.3d 807, 822 (1995) (citing Cal. Civ. Code §§ 1638, 1639). Thus, "if the meaning a lay person would ascribe to contract language is not ambiguous, [the court] appl[ies] that meaning." *Id.* Accordingly, "[t]he language of a contract is

5

to govern its interpretation, if [it] is clear and explicit, and does not involve an absurdity." *F.B.T. Prods., LLC v. Aftermath Records*, 621 F.3d 958, 963 (9th Cir. 2010) (quoting Cal. Civ. Code § 1639). "A party's assertion of ambiguity does not require the district court to allow additional opportunities to find or present extrinsic evidence if the court considers the contract language and the evidence the parties have presented and concludes that the language is reasonably susceptible to only one interpretation." *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1017 (9th Cir. 2012). If the court determines that the language of the contract is ambiguous, *i.e.*, reasonably susceptible to more than one interpretation, the court moves to the second question: what did the parties intend the language to mean? *Southern Cal. Edison Co. v. Sup. Ct.*, 37 Cal.App.4th 839, 847 (1997). The court may review extrinsic evidence, if available, to make that determination. *Cedars-Sinai Medical Ctr. v. Shewry*, 137 Cal.App.4th 964, 980 (2006).

B. Analysis

1. Breach of Contract

To prevail on a breach of contract claim, a plaintiff must establish "(1) [a] contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to the plaintiff therefrom." *Wall St. Network, Ltd. v. N.Y. Times Co.*, 164 Cal. App. 4th 1171, 1178 (2008) (citation omitted). Except as explained below, on this motion, Defendants challenge only whether Plaintiff has adequately plead a breach with respect to the length of his employment term, unpaid bonus compensation, and unpaid severance. Each issue is addressed below.

a. Duration of Employment Term

The parties disagree whether, upon Defendants' June 29, 2016 letter of non-renewal, Plaintiff would have become an at-will employee on December 15, 2016 or December 15, 2017. Plaintiff argues the Agreement states it "shall be extended for additional one-year periods at the end of *each contract year*," and that, thus, at the end of his first contract year (December 15, 2015), the end of his employment term was automatically extended from December 15, 2016 (the end of the initial term) to 2017 (the end of the one year extension beyond the initial term). Plaintiff contends that in order to prevent the extension, written notice of termination would have had to have been given 60 days prior to the end of the first contract year (*i.e.* sixty (60) days prior

6

to December 15, 2015). The Agreement states the term is extended "unless Employee or Company provide written notice to the other party at least sixty (60) days prior to the termination of the *then current term* of this Agreement." (Emphasis added.) Plaintiff equates "then current term" with "each contract year."

Defendants, on the other hand, contend that for the notice of termination to be effective as of December 15, 2016, it need only have been given 60 days before that date since December 15, 2016 is the end of the "then current term" (*i.e.* the initial term of the Agreement). They equate the "then current term of the Agreement" with the "Employment Term" defined in the Agreement – the two year term ending on December 15, 2016.

Defendants' reading of "then current term" is much more natural than Plaintiff's. December 15, 2016 marked the end of the initial "Employment Term" of the Agreement and when the June 29, 2016 non-renewal letter was sent, the parties were within 60 days of the "then current term of this Agreement." In contrast, the phrase "the then current term" seems entirely dissimilar to the term "each contract year."

Further, under Plaintiff's interpretation, the Agreement would effectively require notice of non-renewal more than a full year in advance of the termination date rather than 60 days in advance. Such a lengthy period would seem unusual. On the other hand, the contract also states it "is the intent of Employee and Company that the Employee be always under contract for the next two years." Agreement § 1(a). Accordingly, Plaintiff's construction, while a stretch, is not patently unreasonable because it would effectively establish that "the Employee be always under contract for the next two years."

Because the contract permits both Plaintiff and Defendant's interpretations, the Court concludes that the contract language is ambiguous. The Court may ultimately be able to resolve this ambiguity as a matter of law after considering, if any, relevant extrinsic evidence. For purposes of the present motion under Rule 12(c), however, no such extrinsic evidence may properly be considered.[1] The Court thus **DENIES** Defendants' motion for judgment on the

---

[1] At this point neither side has proffered extrinsic evidence in aid of interpreting the Agreement.

7

1    pleadings on this issue without prejudice to revisiting the issue at the appropriate stage.

2            b.        <u>Unpaid Bonus Compensation</u>

Plaintiff alleges he was not paid a bonus from January 1, 2016 to February 1, 2017 but that such payment was required by the Agreement. Compl. ¶ 35. This question turns on the interpretation of Section 2(a)(ix)'s language regarding bonus compensation. The Agreement does not create an enforceable promise to pay bonus compensation; it merely stated the parties would—or, at best, that they were obligated to—negotiate bonus compensation at a later date.

Plaintiff argues that under Section 2(a)(ix), "[i]t is clear that the $225,000 to $250,000 is the minimum pay rate for 2016 and beyond." Opp. at 5. In fact, the contract states "[t]he minimum *goal* for base and bonus compensation is to be in the $225,000 - $250,000 range with mutually agreeable stretch goals/incentives to exceed $250,00 with no upside cap on total compensation as goals and incentives exceed expectations." Agreement § 2(a)(ix) (emphasis added). Thus, the contract on its face does not set $225,000 to $250,000 as a "minimum pay rate," but rather, as a "goal."

Further, immediately before the sentence referring to the "goal," the contract expressly states that "[g]iven the living and breathing changes (i.e. financial, operational, cultural, etc. changes) at Energy Systems, Employee and Company *will be able* to better *establish* incentive compensation for 2016 and beyond *sometime after the mid-year in 2015*." *Id.* (emphasis added). The use of the aspirational term "goal," the use of the future tense ("will be able to"), the reference to "establish[ing] incentive compensation" at an indefinite later date, and an allusion to creating "mutually agreeable stretch/goals/incentives" together make clear that the Agreement itself does not create a specific enforceable contractual term with respect to bonus compensation. Moreover, the bonus, if any, would turn on a host of factors, some of which (*e.g.*, "profitability") would seem impossible to measure without some objective benchmarks or metrics.

The multiplicity of amorphous factors – cited as a non-exhaustive list given the term "etc." cited at the end of each list – on which the bonus might be predicated contrasts with the cases cited by Plaintiff in his supplemental briefing. In *Chinn v. China Nat'l Aviation Corp.*, 138 Cal.App.2d 98 (1955), the dispute was not over whether the terms were sufficiently clear but rather whether

8

plaintiff's reliance on the benefits policy to stay in the job constituted adequate consideration; indeed, the employer's policies specifically and concretely defined the disputed benefits as severance pay (with a formula for calculating it) and a cash allowance to pay for travel of plaintiff's wife and children to place of employment. *Id.* at 100. In *Okun v. Morton*, 203 Cal.App.3d 805 (1988), the court enforced an agreement between business partners to pursue future opportunities on a "mutually agreeable" basis because, although the provision left the parties "discretion to formulate and structure the ownership for each [future venture]," the contract terms were otherwise "sufficient to establish from the outset the ways in which future ventures were to be financed, owned, and operated by the parties." *Id.* at 817-18. In contrast, here, the Agreement makes clear that the bonus terms have *not* been agreed "from the outset," *id.*, and the criteria for determining any such bonus was amorphous.

Plaintiff relies on *Sabatini v. Hensley*, 161 Cal.App.2d 172 (1958), where the court held that the failure to specify a bonus formula is not fatal because the court will "imply an agreement to pay the reasonable value of the services [rendered by the employee] and will permit recovery of the excess of such amount over the salary paid [to him]." *Id.* at 176. However, that was possible only "where the parties expressly agree that an additional amount [over salary] shall be paid" as bonus. *Id.* Unlike *Sabatini*, there is no guarantee to pay bonus in the first place, as the agreement refers to the bonus in aspirational terms only, subject to further negotiations. Moreover, while it may be possible to ascertain the reasonable value of services rendered (as occurs under the doctrine of quantum meruit), the factors here are far more open-ended and ill-defined.

The Court thus holds that the Agreement does not create an enforceable promise to pay a bonus to Plaintiff from 2016 onward. That does not end the matter, however. In his supplemental brief, Plaintiff claims that Defendants also breached by refusing to *discuss* the bonus with him despite his attempts to do so. *See* Docket No. 22 at 3. Plaintiff did not present legal authority to support this theory, but the Court's own review indicates that it is viable. Under California law, a "contract to negotiate the terms of an agreement" is enforceable, but a party "will be liable only if a failure to reach ultimate agreement resulted from a breach of that party's obligation to negotiate or to negotiate in good faith." *Copeland v. Baskin Robbins U.S.A.*, 96 Cal.App.4th 1251, 1257

9

(2002).² Here, the Agreement can fairly be read to state the parties would negotiate bonus for 2016 and onward after mid-2015. The Agreement need not specify a requirement to negotiate in good faith because one is implied into every contract by California law. *Id.* at 1259, n.18.

However, Plaintiff's requested damages—the bonus he claims to be entitled to—are not recoverable under this failure to negotiate theory. *Id.* at 1263. ("The plaintiff cannot recover for lost expectations (profits) because there is no way of knowing what the ultimate terms of the agreement would have been or even if there would have been an ultimate agreement."). Rather, his damages would be limited to reliance damages, such as "out-of-pocket costs in conducting the negotiations" and possibly "lost opportunity costs." *Id.*; *see also* Plf's Supp. Br. at 3 (Defendants' promises purportedly induced Plaintiff to "leav[e] a current and profitable job").

Because Plaintiff's complaint does not plead facts sufficient to support a claim for failure to negotiate or to negotiate in good faith, or recoverable damages, the Court **GRANTS** Defendants' motion for judgment on the pleadings. However, the Court will give Plaintiff leave to amend with additional factual material to support the claim.³ If Plaintiff chooses to pursue this failure to negotiate claim, he must allege specific, nonconclusory facts to show that Defendants failed to negotiate with him, that their failure was the reason no agreement was reached, and that he incurred recoverable damages which are limited under this theory.

Accordingly, the Court **GRANTS** Defendants' motion with respect to the unpaid bonuses,

---

² Defendants' cases cited for the proposition that an "agreement to agree" is unenforceable are inapposite. *See Ablett v. Clauson*, 43 Cal.2d 280, 284 (1954) (explaining that a contract is generally unenforceable "if an essential element is reserved for the future agreement of both parties"); *Roberts v. Adams*, 16 Cal.2d 312 (1958) (same). In *Copeland*, the court distinguished between an agreement to *agree* and an agreement to *negotiate*. The latter is enforceable; the former is not. 96 Cal.App.4th at 1257 ("A contract to negotiate the terms of an agreement is not, in form or substance, an 'agreement to agree.' [. . .] Failure to agree is not, itself, a breach of the contract to negotiate.").

³ Plaintiff submitted e-mails to support his claim that Defendants failed to engage him in negotiations about his bonus. *Id.*, Ex. A. The Court does not suggest the contents of these e-mails, standing alone, would survive a motion to dismiss an amended complaint. For example, the e-mails refer to a lack of profitability at the company. Under *Copeland*, however, Plaintiff must prove that Defendants' failure to negotiate—rather than the company's lack of profitability or some other cause—caused the failure to reach a bonus agreement. Moreover, the e-mails show only that Plaintiff asked to speak, but say nothing about whether Defendants then failed to do so. Any amended complaint must contain factual allegations adequate to support those inferences.

1 but grants Plaintiff leave to amend.

         c.      Severance

Plaintiff alleges that he was entitled to a "lump sum severance payment of an amount equal to one year of salary at the rate in effect at the time of termination and full benefits." Compl. ¶ 19. Plaintiff points out, correctly, that Defendants do not address this allegation in their motion.[4] Opp. at 6. Although Plaintiff argues that Defendant's failure means "the Complaint must stand," *id.*, the Court has authority to dismiss the claim under Rule 12(b)(6) sua sponte "without notice where the claimant cannot possibly win relief." *Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987). Here, the contract clearly states that Plaintiff is only entitled to the severance if he is terminated "without cause." Agreement §§ 3(d), 3(f). However, Plaintiff does not allege that he was terminated without cause, or make any allegations about the employer's reason, if any, for terminating him. As stated at the hearing, the Court thus **DISMISSES** the claim with respect to severance *sua sponte*, with leave to amend. Plaintiff shall include specific factual allegations concerning his termination in his amended complaint establishing that he was terminated without cause, if he wishes to pursue this claim. The allegations must be sufficiently specific to meet *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

      2.      Nonpayment of Wages

Plaintiff also asserts a claim under California Labor Code section 201(a), which states that "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Cal. Labor Code § 201(a). California law defines "wages" under this statute to "include[] all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation." Cal. Labor Code § 200. The definition is broadly construed and includes bonuses and other benefits, *see Schachter v. Citigroup, Inc.*, 47 Cal.4th 610, 618 (2009) ("Incentive compensation, such as bonuses and profit-sharing plans, also constitute wages [under

---

[4] Defendants do not materially engage with Plaintiffs' claims about the severance package in their Reply either, except for stating that Section 3(e) [the portion misidentified in Plaintiff's complaint and opposition] does not refer to a severance. Reply at 8. Although that is true, Defendants ignore Sections 3(d) and 3(f), quoted above.

11

1  Section 200]."), as well as severance payments. *See Battista v. F.D.I.C.*, 195 F.3d 1113, 1120, n.8 (9th Cir. 1999) ("California law treats severance pay as wages.").

For the most part, this claim rises and falls with Plaintiff's breach of contract claim. Whether Plaintiff's claim is successful will rest on whether he can successfully plead a breach of contract with respect to bonuses and his unpaid severance. For the same reasons explained above, the Court **GRANTS** the motion with leave to amend with respect to unpaid bonuses and unpaid severance.

However, Plaintiff also seeks to recover post-termination wages from Feb. 1, 2017 to Dec. 15, 2017 (the period Plaintiff states he should have been entitled to remain in employment if his interpretation of the employment term provisions is correct) as wages under Section 201(a). Plaintiff provides no basis, and the Court has located none, for the assertion that prospective wages not yet "earned," Cal. Labor Code § 201(a), for time not yet worked, can be recovered under Labor Code § 201, simply because the employer's termination was not supported by good cause. Such an application would likely be contrary to the statute's purpose. *See, e.g., Pressler v. Donald L. Bren Co.*, 32 Cal.3d 831, 837 (1982) ("The policy underlying this process is sound for it ensures the expedition of the collection of wages which are due but unpaid."). Further, the definition of "wages" suggests otherwise. Cal. Labor Code § 200 (defining "wages" as "all amounts for labor *performed*" (emphasis added)). Plaintiff does not allege he performed any labor from February 1, 2017 to December 15, 2017. Accordingly, the Court **GRANTS** judgment on the pleadings with prejudice with respect to this claim.

3. <u>Alter-Ego Liability of Parent Company</u>

Defendants also request dismissal with prejudice of all claims against Worth Holdings, on the basis that Worth Holdings was not a party to the contract between Plaintiff and E.S. West Coast. The Court agrees that, under California law, a plaintiff may not maintain a breach of contract claim against a person who is not a party to the contract. *Tri-Continent Int'l Corp. v. Paris Savings & Loan Assn.*, 12 Cal.App.4th 1354, 1359 (1993) (non-party to contract cannot be held liable for breach of contract): *cf. Minnesota Mut. Life Ins. Co. v. Ensley*, 174 F.3d 977, 981 (9th Cir. 1999) ("Under California law, an insurance agent cannot be held liable for breach of

12

contract . . . because he is not a party to the insurance contract.").

Plaintiff's sole response is that E.S. West Coast is 100% owned by Worth Holdings. Opp. at 5 (citing Defendants' Certificate of Interested Entities or Persons, Docket No. 5). To prevail on an alter-ego theory, however, Plaintiff must allege more than mere ownership. *Firstmark Capital Corp. v. Hempel Financial Corp.*, 859 F.2d 92, 94-5 (9th Cir. 1988) (ownership is necessary but not sufficient for alter ego liability). The parent corporation can be found liable for the actions of its subsidiary "when there is (1) such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, and (2) that if the acts are treated as those of the corporation alone, an inequitable result will follow." *Pantoja v. Countrywide Home Loans, Inc.*, 640 F.Supp.2d 1177, 1192 (N.D. Cal. 2009) (Ware, J.); *see also Kema, Inc. v. Koperwhats*, 658 F.Supp.2d 1022, 1032 (N.D. Cal. 2009) (Chesney, J.). Although Plaintiff alludes to (but does not plead) facts meeting the first prong,[5] he makes no reference to what inequitable result will follow from failure to apply the alter-ego theory here. He thus fails to plead alter-ego liability under this theory.

Another avenue to parent corporation liability is "when the subsidiary is the agent of the parent, which requires a showing that the parent so controls the subsidiary as to cause the subsidiary to be become [sic] merely the instrumentality of the parent." *Pantoja*, 640 F.Supp.2d at 1192. Here, Plaintiff only makes the conclusory allegation that all defendants were agents of one another, Compl. ¶ 6, which is nothing more than a "[t]hreadbare recital[] . . . supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is not sufficient to meet the pleading requirements.

Accordingly, the Court **GRANTS** Defendants' motion to dismiss Worth Holdings as a defendant with leave to amend. Plaintiff should allege, with specificity, facts sufficient to plausibly support an alter-ego theory of liability if he wishes to pursue his claims against Worth Holdings.

---

[5] Plaintiff argues "[t]here are sufficient facts showing that there is no separation between Worth Holdings and E.S. West Coast," Opp. at 6, but there are no such allegations in the Complaint. Moreover, that sole allegation is conclusory.

13

### III. CONCLUSION

For the reasons stated above, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**. Defendant's motion is **DENIED** with respect to Plaintiff's claim that Defendant breached the contract by terminating him with insufficient notice; **GRANTED** with respect to unpaid bonuses, though Plaintiff may amend the complaint as specified above to make a claim under a failure to negotiate theory; **GRANTED** with respect to Plaintiff's Labor Code claim for unpaid severance and unpaid bonuses with leave to amend, but with prejudice with respect to wages after the date of his termination; and **GRANTED** with respect to Defendant Worth Holdings, with leave to amend to support alter-ego liability. The Court *sua sponte* **DISMISSES** Plaintiff's claim for unpaid severance with leave to amend to allege termination without cause. Any amended complaint shall be filed within thirty (30) days of the date of this order.

This order disposes of Docket No. 13.

**IT IS SO ORDERED**.

Dated: September 18, 2017

_____
EDWARD M. CHEN
United States District Judge